# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 11-222** |
| **v.** | : | **DATE FILED: November 15, 2011** |
| **HUGH C. CLARK** | : | **VIOLATIONS:** |
| **INA M. WALKER** | | **18 U.S.C. § 371 (conspiracy - 1 count)** |
| | : | **18 U.S.C. § 1343 (wire fraud - 25 counts)** |
| | | **18 U.S.C. § 666 (theft from a federally** |
| | : | **funded program - 1 count)** |
| | | **18 U.S.C. § 1344 (bank fraud - 1 count)** |
| | : | **18 U.S.C. § 2 (aiding and abetting)** |

## S U P E R S E D I N G   I N D I C T M E N T

### COUNT ONE

#### (Conspiracy)

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

#### Background

1.     The New Media Technology Charter School ("New Media") was a charter school based Philadelphia.  Charter schools like New Media generally receive five-year charters from a local school district and receive compensation based on the number of students they serve.  New Media began as a high school in 2004 with a ninth grade class and added a high school grade each subsequent school year.   In addition, in 2005, the second full year of operation, New Media expanded to include a middle school.  New Media was an "organization" which received annual benefits in excess of $10,000 in federal funds in each of the calendar years 2004 through 2009 under a federal program involving a grant, contract, subsidy, loan, guarantee,

and other form of federal assistance, in connection with providing educational services to students at New Media.

       a.      The federal funds paid to New Media could be used only by New Media in connection with providing educational services to students at New Media. The federal funds paid to New Media could not be used to provide educational services to students at other charter, public, or private schools. The federal funds paid to New Media could not be used for business ventures or personal expenses by agents of New Media.

       b.      From inception, New Media struggled to meet its maximum allowable student enrollment. Because a charter school's compensation is based on the number of students it serves, in the 2004-2005 academic year, New Media did not receive the maximum possible compensation available under the New Media charter.

       2.      Defendant HUGH C. CLARK was a founder of New Media. Defendant CLARK served as president of the New Media board of directors from its inception in or about the summer of 2004 until he was forced to resign effective December 31, 2009. Defendant CLARK was not paid in this capacity and he worked as a private attorney and law clerk for City of Philadelphia. As board president, defendant CLARK had responsibility for overseeing the operations of New Media. Defendant CLARK took primary responsibility for managing the financial affairs of New Media and exercised final authority over the disposition of the New Media's funds.

       3.      Defendant INA M. WALKER was a founder of New Media. Prior to founding New Media, defendant WALKER was an educator at a small private school called Lotus Academy. At Lotus Academy, defendant WALKER earned less than $30,000 annually.

Defendant WALKER served as CEO of New Media from its inception in or about the summer of 2004 until she was forced to resign effective December 31, 2009. At New Media, defendant WALKER's salary averaged over $100,000 per calendar year. Defendant WALKER was responsible for the day to day operation of New Media and had signatory authority over the New Media bank accounts.

4.     The Lotus Academy was founded in 1974 as a small private independent school by defendant HUGH C. CLARK, among others. Defendant INA M. WALKER became executive director of Lotus Academy in the mid-1980s. During the relevant time period, Lotus Academy functioned primarily as a preschool and an elementary school, serving fewer than 100 students.

a.     While serving as President of the Board of New Media, defendant HUGH C. CLARK simultaneously served as President of the Board of Lotus Academy. However, after the New Media Board's inception in summer of 2004, the Lotus Academy Board rarely – if ever – met. Defendant CLARK maintained primary responsibility for managing the financial affairs of Lotus Academy without oversight. Defendant CLARK exercised final authority over the disposition of Lotus Academy's funds, without any oversight. Defendant CLARK used Lotus Academy funds for his personal business ventures and personal expenses.

b.     Until at least December 31, 2008, defendant INA M. WALKER served in an "unpaid" executive position at Lotus Academy while earning an average of over $100,000 a year as the CEO of New Media. From New Media's inception until her forced resignation effective December 31, 2009, defendant INA M. WALKER had signatory authority

on both Lotus Academy's and New Media's bank accounts. Defendant WALKER used Lotus Academy funds for her personal expenses and personal business ventures.

        c.     Lotus Academy struggled financially, in part due to the challenge of finding students who could afford Lotus Academy's tuition payments and in part because of the costs associated with expenditures incurred by defendants HUGH C. CLARK and INA M. WALKER.

        d.     By September 2005, defendants HUGH C. CLARK and INA M. WALKER caused Lotus Academy to stop operating Lotus Academy's middle school at 340 East Haines Street, a property owned by Lotus Academy. Defendants CLARK and WALKER caused New Media to open a New Media Technology Charter School as a middle school for grades 5-8 at Lotus Academy's East Haines Street property. New Media high school continued to operate in a separate building.

        e.     As a result of the additional students in grades 5-8, New Media's overall enrollment doubled. In addition, New Media's per pupil charter school reimbursement was higher than Lotus Academy's per student tuition. As a result, the amount of funds controlled by defendants HUGH C. CLARK and INA M. WALKER increased substantially.

        5.     Black Olive LLC was a company created and controlled by defendants HUGH C. CLARK and INA M. WALKER. Beginning in 2008, Black Olive LLC operated a health food store called the Black Olive Wellness Center ("Black Olive health food store") and a restaurant called the Black Olive ("Black Olive restaurant"). Defendants CLARK and WALKER diverted substantial funds from New Media and Lotus Academy to their Black Olive business ventures.

6. Tekhen Communications a/k/a Tekhen Enterprises ("Tekhen") was a company created and solely controlled by defendant HUGH C. CLARK. Tekhen was a web design and internet access company, with few actual customers. Defendant CLARK diverted substantial funds from New Media and Lotus Academy to benefit Tekhen.

### The Conspiracy

7. From in or about March 2005 to in or about December 2009, at Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendants

**HUGH C. CLARK and
INA M. WALKER**

conspired and agreed, together and with others known and unknown to the grand jury, to:

(a) commit an offense against the United States, that is to knowingly devise a scheme to defraud New Media Technology Charter School and to obtain money and property from it by means of false and fraudulent pretenses, representations, and promises, and to use interstate wire communications to further the scheme to defraud, in violation of Title 18, United States Code, Section 1343; and

(b) commit an offense against the United States, that is, as agents and employees of New Media Technology Charter School, an organization which received benefits of more than $10,000 in each of the years 2005 through 2009, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of federal assistance, embezzled, stole, and obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than the rightful owner and intentionally misapplied property valued at $5,000 or more, that is, cash which was owned by and under the care, custody and control of the New

Media Technology Charter School, in violation of Title 18, United States Code, Sections 666(a)(1)(A), (b).

## **Manner and Means**

It was part of the conspiracy that:

8.      Defendant HUGH C. CLARK and INA M. WALKER abused their positions at New Media in various ways to enrich themselves and advance their personal interests including: (1) diverting New Media funds to the bank accounts of Lotus Academy, the private school they controlled; (2) diverting New Media funds to advance their unsuccessful personal business ventures, including Black Olive health food store, Black Olive restaurant, and Tekhen; and (3) submitting improper personal charges for direct payment or reimbursement from New Media.

9.      Defendants HUGH C. CLARK and INA M. WALKER did not implement controls to prevent and detect fraud at New Media.  Rather, defendants CLARK and WALKER knew that the New Media accounting records did not properly record New Media transactions.

10.      Defendants HUGH C. CLARK and INA M. WALKER lied to the New Media board of directors and to outside auditors about the true financial condition of New Media. For example, in or about February 2008 and again in or about February 2009, defendants CLARK and WALKER falsely certified to the outside auditing firm, among other things, that there were no material transactions that had not been properly recorded in the accounting records underlying the financial statements and that they were not aware of any fraud or suspected fraud at the school.

11.     As a result of the improper and fraudulent payments directed by defendants HUGH C. CLARK and INA M. WALKER, New Media failed to pay legitimate New Media expenses.  For example, from in or about December 2007 through in or about February 2009, New Media failed to remit the required monthly employee withholdings and quarterly employer contributions to the Pennsylvania School Employees Retirement System.  From October 2006 through November 2008, New Media carried a past-due balance with one of its primary textbook vendors.  On several occasions, there were insufficient funds in New Media's bank account to cover employee payroll checks.  In Spring of 2009, coaches for New Media's athletic teams remained unpaid or partially paid.

12.     In all, defendants HUGH C. CLARK and INA M. WALKER's fraudulent use of New Media resources for their private school, their personal business ventures and their personal expenses caused a loss to New Media of approximately $522,000.

13.     A portion of the activity in furtherance of the conspiracy is further explained here:

### Direct Payments to Lotus Academy

14.     Between August 2004 and June 2009, defendants HUGH C. CLARK and INA M. WALKER directed at least $1 million in net payments to Lotus Academy or for the benefit of Lotus Academy.   The majority of the payments to Lotus Academy related to New Media's lease of the middle school facility from Lotus Academy.  However, from in or about May 2005 to in or about June 2009, defendants CLARK and WALKER diverted from New Media at least $309,000 in fraudulent payments directly to Lotus Academy.

15.     Defendants HUGH C. CLARK and INA M. WALKER caused New Media to enter into agreements with terms favorable to Lotus Academy, often unwritten or unexecuted, regarding New Media's lease of the middle school facility from Lotus Academy.  As further described below, these agreements were not arm's-length transactions.  Defendants CLARK and WALKER controlled both sides of these transactions and unilaterally set the terms. Not only did these agreements provide for a generous and steady stream of income from New Media to Lotus Academy, the steady rental payments from New Media to Lotus Academy disguised the additional, fraudulent payments that defendants CLARK and WALKER directed from New Media to Lotus Academy.

a.     Although there was no signed lease agreement, defendants CLARK and WALKER caused New Media to pay $7,225 each month for the 2005-2006 school year for a portion of Lotus Academy's middle school building.  Lotus Academy continued to occupy the remainder of the building to operate the Lotus Academy elementary school.

b.     Defendants CLARK and WALKER caused New Media's monthly rent payment to Lotus Academy increase to $15,000 for the 2006-2007 school year.  Defendants CLARK and WALKER unilaterally set the rental rates and there were no contemporaneously signed lease agreements.

c.     In or about November 2009, while defendant CLARK maintained control of Lotus Academy but no longer had unfettered access to New Media funds, defendant CLARK attempted to unilaterally increase the New Media rent payment to Lotus Academy from $15,000 to $17,500.  Defendant CLARK created a lease agreement and claimed it applied retroactively to July, 2009 for the 2009-2010 school year.

d.      In or about November 2009, without authority or approval from the New Media board of directors, defendant CLARK transferred $15,000 from New Media's Sovereign Bank account to the Sovereign Bank account of Lotus Academy.  The unauthorized $15,000 transfer was purportedly for six month's worth of $2,500 monthly back rent from New Media to Lotus Academy.  When authorities at New Media discovered the unauthorized transfer and confronted defendant CLARK, defendant CLARK admitted to the transfer.  Defendant CLARK claimed Lotus Academy could not return the $15,000 defendant CLARK took because Lotus Academy had already spent the money.  As a result, New Media authorities withheld $15,000 from New Media's January, 2010 rent payment to Lotus Academy.

16.      Despite the steady stream of rent revenue from New Media to Lotus Academy, from in or about May 2005 to in or about June 2009, defendants HUGH C. CLARK and INA M. WALKER directed at least $309,000 in fraudulent payments directly to Lotus Academy.   Once the money was deposited into Lotus Academy bank accounts, defendants CLARK and WALKER spent the money on the expenses of their private school, and also on their personal and business ventures.

a.      From in or about May 2005, to in or about August 2008, defendants HUGH C. CLARK and INA M. WALKER directed fraudulent payments ranging from $6,000 to $25,000 directly to Lotus Academy.  Defendant CLARK and WALKER directed that the payments be falsely designated in New Media accounting records as loans to Lotus Academy.

b.        In August 2008, defendant HUGH C. CLARK caused New Media to began paying a second monthly payment, typically $15,000, to Lotus Academy, in addition to its monthly rental fee.

c.        In Fall 2008, in response to inquiries from the outside accountant about the extra monthly $15,000 payments to Lotus Academy, defendant INA M. WALKER directed the accountant to defendant HUGH C. CLARK, who instructed the accountant to falsely designate the payments in New Media accounting records as prepaid rent to Lotus Academy and additional security deposits.

d.        On or about March 31, 2009, while New Media was undergoing an audit by Philadelphia School Reform Commission, defendant HUGH C. CLARK caused a false accounting entry to be made in New Media accounting records to disguise a portion of the payments to Lotus Academy.  In the false entry, $250,000 in payments to Lotus Academy was falsely classified as a "building purchase deposit" in New Media's accounting records.  In fact, there was no executed building purchase agreement between New Media and Lotus Academy to justify funds on deposit; nor was the $250,000 in purported deposited funds being held in escrow by Lotus Academy.  Defendants CLARK and WALKER had spent those funds on Lotus Academy expenses or their personal business ventures shortly after the funds arrived in Lotus Academy's bank accounts.  The sale was never consummated.

e.        In or about April 2009, defendants HUGH C. CLARK and INA M. WALKER directed an additional $7,500 to Lotus Academy without an invoice.  The expense was entered into New Media's accounting records as an expense for repairs to the middle school building that New Media was leasing from Lotus Academy.

**Payments to Vendors and Contractors**
**for the benefit of Lotus Academy, Black Olive, and Tekhen**

17.     Defendants HUGH C. CLARK and INA M. WALKER caused New Media to pay operating expenses for Lotus Academy and the Black Olive business ventures. Defendants CLARK and WALKER often disguised these benefits to Lotus Academy and the Black Olive business ventures by adding additional expenses to existing New Media expenses. At no time did Lotus Academy or Black Olive reimburse New Media for these expenses.

a.      In or about October 2007, defendant CLARK provided Contractor No. 1 with an office at the New Media Middle School for the purpose of creating and preparing the Black Olive health food store for opening. Contractor No. 1 did not teach students or have any legitimate function in New Media middle school. Rather, at the direction of defendant CLARK and under the supervision of defendant WALKER, Contractor No. 1 worked full-time to develop and prepare the Black Olive health food store for opening. Defendant CLARK sometimes disguised payments to Contractor No. 1 as part of a New Media school lunch program. At defendant CLARK'S direction, Contractor No. 1 often paid Black Olive health food store vendors with his/her own funds and was reimbursed by defendant CLARK by checks from New Media and Lotus Academy.

b.      On or about January 30, 2008, defendants CLARK and WALKER paid Contractor No. 1 funds from a New Media bank account in the amount of $4,265 to disguise the true purpose of the payments. The following day, at the direction of defendant CLARK, Contractor No. 1 wired funds in the amount of $4,239.93 from Contractor No. 1's personal bank

account to a Black Olive vendor for payment of an outstanding Black Olive health food store invoice.

          c.     In or about October 2007, defendant CLARK hired a marketing contractor ("Contractor No. 2") to provide marketing services to New Media and Lotus Academy.  Contractor No. 2 was paid by New Media checks for services to both New Media and Lotus Academy.  In November 2007, at the direction of defendant CLARK, the marketing contractor's monthly retainer was increased by $750 because of additional marketing services needed for the Black Olive business ventures and Restaurant No. 2, a second restaurant in which defendants CLARK and WALKER had a financial interest.  However, defendant CLARK instructed Contractor No. 2 that the names of defendants CLARK and WALKER could not be used in media promotional materials for the Black Olive ventures.  From in or about October 2007 to in or about February 2008, defendants CLARK and WALKER caused New Media to pay over $15,000 to Contractor No. 2 for marketing services to New Media, Lotus Academy, Black Olive business ventures, and Restaurant No. 2.  At no time did defendants CLARK or WALKER cause Lotus Academy, Black Olive business ventures, or Restaurant No. 2 to reimburse New Media for any of the marketing expenses.

          d.     In or about October 2007, at the direction of defendants CLARK and WALKER, New Media and Lotus Academy held a two-day joint staff retreat at a beachfront hotel and conference center in Ocean City, Maryland.  The retreat, which included complimentary bus travel, meals, and overnight accommodations at the hotel, was mandatory for New Media and Lotus Academy staff members.  Defendants CLARK and WALKER approved

New Media's payment of the entire cost of the retreat, over $8,900.  At no time did Lotus Academy reimburse its share of the expenses.

        e.       In or about October 2008, at the direction of defendants CLARK and WALKER, New Media and Lotus Academy held another two-day joint staff retreat at the same beachfront hotel and conference center in Ocean City, Maryland.  The retreat, which included complimentary bus travel, meals, and overnight accommodations at the hotel, was mandatory for New Media and Lotus Academy staff members.  At least 15% of attendees were Lotus Academy staff.  Defendants CLARK and WALKER approved New Media's payment of the entire cost of the retreat, which was more that $10,000.  At no time did Lotus Academy reimburse its share of the expenses.

        f.       In Fall 2007, New Media paid over $44,900 to repair and then replace the boiler at the middle school property New Media leased from Lotus Academy.  At no time did landlord Lotus Academy reimburse tenant New Media for this expense.

        g.       In or about December 2007, New Media paid over $36,000 to re-grade and re-pave the parking lot at the middle school property New Media leased from Lotus Academy.   At no time did landlord Lotus Academy reimburse tenant New Media for this expense.

        h.       In or about May 2008, at the direction of defendants CLARK and WALKER, New Media and Lotus Academy held a joint school awards banquet at a hotel in Philadelphia.  Defendants CLARK and WALKER approved New Media's payment of the entire cost of the banquet, over $14,000.  At no time did Lotus Academy reimburse its share of the expenses, approximately $2,100.

i.      In or about May 2009, at the direction of defendants CLARK and WALKER, New Media and Lotus Academy held another joint school awards banquet at the same hotel in Philadelphia.  Defendants CLARK and WALKER approved New Media's payment of the entire cost of the banquet, over $14,000.  At no time did Lotus Academy reimburse its share of the expenses, approximately $2,100.

j.      In or about February 2009, defendant WALKER entered New Media into a written contract to lease three photocopiers at a total cost of $1,500 per month, with quarterly billing for servicing based upon the number of number of copies made during the quarter.  One of the photocopiers was placed at Lotus Academy for Lotus Academy's unfettered use.  From in or about February, 2009 to in or about October, 2009, when the copier was moved from Lotus Academy to the New Media high school, defendant WALKER caused New Media to pay an additional approximately $4,100 in copying costs for the benefit of Lotus Academy.

18.      Defendant HUGH C. CLARK caused New Media to pay operating expenses for his private company Tekhen.  Defendant CLARK disguised these benefits to Tekhen by adding additional expenses to existing New Media expenses.   At no time did Tekhen perform services for these expenses or reimburse New Media for these expenses.

a.      From in or about February 2005, to January 2010, defendant CLARK caused New Media to pay a Tekhen vendor, Hivelocity Ventures, over $14,300 in payments.  While New Media received some services (including the hosting of email and a website) from the vendor, the payments were applied to all of Tekhen's accounts, including web domains and services for Lotus Academy, Black Olive, Tekhen, and Clark and McGill

14

(defendant CLARK's law firm). In total, approximately $7,100 was fraudulently paid by New Media to the Tekhen vendor for the benefit of defendant CLARK's company, Tekhen.

        b.      From in or about May 2007 to in or about August 2009, defendant CLARK caused New Media to pay a Tekhen vendor, Dialup U.S.A., using a monthly automatic payment from New Media's Wachovia bank account. Neither Tekhen nor the Tekhen vendor performed any services for New Media. In total, approximately $14,500 was fraudulently paid by New Media to the Tekhen vendor for the benefit of defendant CLARK's company, Tekhen.

        19.     Because the Lotus Academy and the Black Olive business ventures struggled financially, defendants HUGH C. CLARK and INA M. WALKER caused New Media to pay their utility expenses.

        a.      On or about December 16, 2008, defendants CLARK and WALKER caused a $6,177.72 check to be sent to Philadelphia Gas Works for utility service on multiple accounts. The check contained a memo line for service on accounts belonging to New Media and Lotus Academy. The New Media check included $1,902.35 for Lotus Academy's account servicing Lotus Academy's pre-school and elementary school. However, the entire payment of $6,177.72 is recorded in New Media's accounting records as a utility expense. Lotus Academy did not reimburse New Media for the utility payment.

        b.      In or about July 2009, defendants CLARK and WALKER caused New Media to pay a PECO bill for $3,617.29 for the Black Olive health food store. The payment was for an account named for Lotus Academy and the service address was the Black Olive health food store. The account was past due and no payments had been made on the account for over seven months. New Media was never reimbursed for this expense.

20.     Defendant HUGH C. CLARK, without notice to or approval from the New Media board of directors, entered New Media into a written contact for the sole purpose of benefitting Lotus Academy.  From in or about July 2008 to in or about December 2009, Lotus Academy operated its elementary school by renting a school property at 1196 East Washington Lane.  Lotus Academy intended to purchase the property for Lotus Academy's exclusive use.  At no time did New Media use the property at 1196 East Washington Lane.   On or about June 20, 2008, defendant CLARK, caused New Media and Lotus Academy to enter into a written contract to purchase the school property at 1196 East Washington Lane for $2 million.  Defendants HUGH C. CLARK and INA M. WALKER used $15,000 of New Media's funds as part of the $45,000 deposit.  Defendant HUGH C. CLARK signed as buyer for both New Media and Lotus Academy.  The sale to New Media and Lotus Academy did not close.   In or about April 2009, when the $45,000 deposit was returned to Lotus Academy, defendants CLARK and WALKER never returned the $15,000 to New Media.  Rather, defendants CLARK and WALKER caused the entire $45,000 to be spent in various ways including Lotus Academy expenses (rent and payroll), payments to Black Olive business ventures, and a cash deposit into defendant WALKER's personal bank account to pay WALKER's personal bills.

**Payments to Credit Cards**

21.     From in or about February 2007, through in or about July 2009, defendant HUGH C. CLARK used a New Media credit card to make approximately $30,000 in fraudulent purchases, including personal meals and entertainment, gas, and expenses for his legal practice. The credit card statements were sent to defendant INA M. WALKER's home address. Defendants CLARK and WALKER directed that the bills be paid by New Media.

22.     From approximately in or about March 2005 to in or about June 2009, defendant INA M. WALKER submitted more than $30,000 in fraudulent personal reimbursement requests to New Media and direct payments by New Media to her personal credit card for personal expenses, including personal meals, clothing, and housewares.  The credit card statements were sent to defendant INA M. WALKER's home address.  Defendants CLARK and WALKER directed that the bills and fraudulent reimbursements be paid by New Media.


**Overt Acts**

In furtherance of the conspiracy, defendants HUGH C. CLARK and INA M. WALKER, and others known and unknown to the grand jury, committed the following overt acts in the Eastern District of Pennsylvania, and elsewhere:

23.  On or about April 30, 2007, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 1066, drawn on Wachovia Bank, in the amount of $6,165 to be issued to Lotus Academy.

24.  On or about July 17, 2007 defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3015, drawn on Wachovia Bank, in the amount of $15,000 to be issued to Lotus Academy.

25.  On or about July 31, 2007, defendant HUGH C. CLARK used or authorized the use of a New Media American Express credit card to pay $329 to Jenkins Law Library for legal research.

26. On or about September 6, 2007, defendant HUGH C. CLARK used or authorized the use of a New Media American Express credit card to pay $749.85 to Hivelocity Ventures for payment on Tekhen's account.

27. On or about September 11, 2007, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3127, drawn on Wachovia Bank, in the amount of $74.30 to be issued to Hivelocity Ventures Corp for payment on Tekhen's account for the renewal of the domain names "clarkmcgill.com" and "blackoliverestaurant.com." The check cleared Hivelocity on or about September 24, 2007.

28. On or about September 24, 2007, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3141, drawn on Wachovia Bank, in the amount of $6,985 to be issued to a New Media employee to purchase a cashier's check payable to the Princess Royale for the New Media and Lotus Academy joint staff retreat.

29. In or about October 2007, defendant HUGH C. CLARK hired Contractor No. 2 to perform marketing services to New Media and Lotus Academy.

30. In or about November 2007, defendant HUGH C. CLARK authorized Contractor No. 2's pay increase to perform marketing services to New Media, Lotus Academy, Black Olive, and Restaurant No. 2.

31. On or about December 4, 2007, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3368, drawn on Wachovia Bank, in the amount of $3,750 to be issued to Contractor No. 2's company for marketing services to New Media, Lotus Academy, Black Olive, and Restaurant No. 2.

32. On or about January 7, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3515, drawn on Wachovia Bank, in the amount of $3,750 to be issued to Contractor No. 2's company for marketing services to New Media, Lotus Academy, Black Olive, and Restaurant No. 2.

33. On or about January 31, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3611, drawn on Wachovia Bank, in the amount of $3,750 to be issued to Contractor No. 2's company for marketing services to New Media, Lotus Academy, Black Olive, and Restaurant No. 2.

34. On or about January 30, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 102, drawn on Commerce Bank, in the amount of $4,265 to be issued to Contractor No. 1.

35. On or about January 31, 2008, at the direction of defendant HUGH C. CLARK, Contractor No. 1 wired funds in the amount of $4239.93 from Contractor No. 1's personal Commerce bank account to a Black Olive vendor for payment of an outstanding Black Olive health food store invoice.

36. On or about June 20, 2008, defendant HUGH C. CLARK, caused New Media and Lotus Academy to enter into a written contract to purchase the school property at 1196 East Washington Lane for the benefit of Lotus Academy for $2 million.

37. On or about June 20, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3979, drawn on Wachovia Bank, in the amount of $15,000 to be issued to Eichler Moffly as part of a deposit on New Media and Lotus Academy's purchase of 1196 East Washington Lane for Lotus Academy's use as a school.

38.  On or about August 19, 2008, defendant HUGH C. CLARK used or authorized the use of a New Media American Express credit card to pay $408 to the Pennsylvania Bar Institute.

39.  On or about August 12, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3340, drawn on Wachovia Bank, in the amount of $7,500 to be issued to Lotus Academy.

40.  On or about August 19, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 3624, drawn on Wachovia Bank, in the amount of $8,500 to be issued to Lotus Academy.

41.  On or about September 19, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 4152, drawn on Wachovia Bank, in the amount of $25,000 to be issued to Lotus Academy.

42.  On or about October 7, 2008, defendant INA M. WALKER withdrew $8,416.96 in cash from New Media's Wachovia Bank account to purchase a cashier's check payable to the Princess Royale for the New Media and Lotus Academy joint staff retreat.

43.  On or about October 9, 2008, defendant INA M. WALKER used or authorized the use of a New Media American Express credit card to pay $563.40 for her extended stay at the Princess Royale after the New Media and Lotus Academy joint staff retreat. After being questioned by auditors, on February 5, 2009, defendant WALKER repaid New Media for this personal expense.

44. On or about October 14, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 5407, drawn on Commerce Bank, in the amount of $3,150 to be issued to Contractor No. 1.

45. On or about October 18, 2008, defendant HUGH C. CLARK used or authorized the use of a New Media American Express credit card to pay $25.66 to the Wine and Spirits store in Philadelphia PA.

46. On or about October 19, 2008, defendant HUGH C. CLARK used or authorized the use of a New Media American Express credit card to pay $22.07 to the Acme Market on Germantown Avenue in Philadelphia PA.

47. On or about October 30, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 4261, drawn on Wachovia Bank, in the amount of $15,000 to be issued Lotus Academy.

48. On or about November 10, 2008, defendants HUGH C. CLARK and INA M. WALKER executed an addendum to the New Media agreement to purchase the school property at 1196 East Washington Lane.

49. On or about November 13, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 4357, drawn on Wachovia Bank, in the amount of $15,000 to be issued Lotus Academy.

50. On or about December 8, 2008, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 4382, drawn on Wachovia Bank, in the amount of $6,177.72 to be issued to Philadelphia Gas Works for utility service on multiple accounts belonging to New Media and Lotus Academy.

51.  On or about July 8, 2009, defendants HUGH C. CLARK and INA M. WALKER caused New Media check number 5040, drawn on Commerce Bank, in the amount of $3,617.29 to be issued to PECO for utility service at Black Olive health food store.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH TWENTY SIX

### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

### Introduction

1.  Paragraphs 1- 6 and 8- 51 of Count 1 of this indictment are incorporated here.

### The Scheme to Defraud

2.  Between in or about March 2005 and in or about December 2009, defendants

**HUGH C. CLARK  and
INA M. WALKER**,

devised and intended to devise a scheme to defraud the New Media Technology Charter School, and to obtain money and property from New Media by means of knowingly false and fraudulent pretenses, representations, and promises.

3.  It was the object of the scheme described in paragraph 2 for defendants HUGH C. CLARK and INA M. WALKER to use the resources of New Media in various ways to enrich themselves and advance their personal business interests, including Lotus Academy, the Black Olive business ventures, and Tekhen.

### Manner and Means

4.  It was part of the scheme to defraud that defendants HUGH C. CLARK and INA M. WALKER engaged in the manner and means described in paragraphs 8 - 22 of Count 1 of this indictment.

5.     On or about each of the dates set forth below, in the Eastern District of

Pennsylvania and elsewhere, defendants

**HUGH C. CLARK  and**
**INA M. WALKER**,

for the purpose of executing this scheme, and attempting to do so, and aiding and abetting its

execution, caused to be transmitted by means of wire communication in interstate commerce the

signals and sounds described below, each transmission constituting a separate count:

| COUNT | DATE (on or about) | DESCRIPTION |
|---|---|---|
| 2. | April 30, 2007 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 1066, in the amount of $6,165 issued to Lotus Academy. |
| 3. | July 17, 2007 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3015, in the amount of $15,000 issued to Lotus Academy. |
| 4. | July 31, 2007 | Interstate wire transmission through American Express in Salt Lake City, Utah and Phoenix, Arizona, processing $329 payment to Jenkins Law Library in Philadelphia. |
| 5. | September 6, 2007 | Interstate wire transmission through American Express in Salt Lake City, Utah and Phoenix, Arizona, processing $749.85 payment to Hivelocity Ventures. |
| 6. | September 11, 2007 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3127, in the amount of $74.30 issued to Hivelocity Ventures. |

| COUNT | DATE (on or about) | DESCRIPTION |
|---|---|---|
| 7. | September 24, 2007 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3141, drawn on Wachovia Bank, in the amount of $6,985 issued to a New Media employee to purchase cashier's check. |
| 8. | December 4, 2007 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3368, in the amount of $3,750 issued to Contractor No. 2's company. |
| 9. | January 7, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3515, in the amount of $3,750 issued to Contractor No. 2's company. |
| 10. | January 31, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3611, in the amount of $3,750 issued to Contractor No. 2's company. |
| 11. | January 30, 2008 | Interstate wire transmission through TD/Commerce bank in New Jersey, resulting from clearing of New Media check number 102 in the amount of $4,265 issued to Contractor No. 1. |
| 12. | January 31, 2008 | Interstate wire transmission initiated in Philadelphia, through TD/Commerce bank in New Jersey, resulting from wiring funds in the amount of $4,239.93 from Contractor No. 1's TD/Commerce bank account to the account of a Black Olive vendor. |
| 13. | June 20, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3979, in the amount of $15,000 issued to Eichler Moffly Realtors. |

| COUNT | DATE (on or about) | DESCRIPTION |
|---|---|---|
| 14. | August 19, 2008 | Interstate wire transmission through American Express in Salt Lake City, Utah and Phoenix, Arizona, processing $408 payment to the PA Bar Institute. |
| 15. | August 12, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3340, in the amount of $7,500 issued to Lotus Academy. |
| 16. | August 19, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 3624, in the amount of $8,500 issued to Lotus Academy. |
| 17. | September 19, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 4152, in the amount of $25,000 issued Lotus Academy. |
| 18. | October 7, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media counter withdrawal initiated in Philadelphia, in the amount of $8,416.96. |
| 19. | October 9, 2008 | Interstate wire transmission through American Express in Salt Lake City, Utah and Phoenix, Arizona, processing $563.40 payment to the Princess Royal. |
| 20. | October 14, 2008 | Interstate wire transmission through TD/Commerce bank in New Jersey, resulting from clearing of New Media check number 5407 in the amount of $3,150 issued to Contractor No. 1. |
| 21. | October 18, 2008 | Interstate wire transmission through American Express in Salt Lake City, Utah and Phoenix, Arizona, processing $25.66 payment to the Wine and Spirits Shop. |

| COUNT | DATE (on or about) | DESCRIPTION |
| --- | --- | --- |
| 22. | October 19, 2008 | Interstate wire transmission through American Express in Salt Lake City, Utah and Phoenix, Arizona, processing a $22.07 payment to the Acme Market in Philadelphia PA. |
| 23. | October 30, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 4261, in the amount of $15,000 issued to Lotus Academy. |
| 24. | November 13, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 4357, in the amount of $15,000 issued to Lotus Academy. |
| 25. | December 8, 2008 | Interstate wire transmission through Wachovia bank in Charlotte, North Carolina, resulting from clearing of New Media check number 4382, in the amount of $6,177.72 issued to Philadelphia Gas Works. |
| 26. | July 8, 2009 | Interstate wire transmission through TD/Commerce bank in New Jersey, resulting from clearing of New Media check number 5040 in the amount of $3,617.29 issued to PECO for utility service at Black Olive health food store. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWENTY SEVEN

### (Theft From a Program Receiving Federal Funds)

**THE GRAND JURY FURTHER CHARGES THAT**:

      1.      Paragraphs 1- 6 and 8- 51 of Count 1 of this indictment are incorporated here.

      2      Between in or about September 2004 and in or about December 2009, defendants HUGH C. CLARK and INA M. WALKER were management officials, employees and agents of New Media.

      3.      Between in or about March 2005 and in or about December 2009, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**HUGH C. CLARK  and
INA M. WALKER,**

being agents and employees of the New Media Technology Charter School, an organization which received benefits of more than $10,000 in each of the years 2005 through 2009, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of federal assistance, embezzled, stole, and obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than the rightful owner and intentionally misapplied property valued at $5,000 or more, that is, cash totaling approximately $522,000 which was owned by and under the care, custody and control of the New Media Technology Charter School.

      In violation of Title 18, United States Code, Sections 666(a)(1)(A), (b) and 2.

## COUNT TWENTY EIGHT

### (Bank Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

### INTRODUCTION

1.      Paragraphs 1-5 and 8 of Count 1 are realleged here.

2.      Wilmington Savings Fund Society ("WSFS") was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC") since approximately February 6, 1958,  FDIC Certificate Number 17838.

3.      Defendants HUGH C. CLARK and INA M. WALKER used the commercial property located at 22-24 East Mount Airy Avenue in Philadelphia to house their failed business venture, the Black Olive restaurant.

### THE SCHEME

4.      From in or about April, 2006, to on or about July 14, 2010, in the Eastern District of Pennsylvania, defendants

**HUGH C. CLARK  and**
**INA M. WALKER,**

knowingly executed, and attempted to execute, and aided and abetted the execution of, a scheme to defraud Wilmington Savings Fund Society, and to obtain monies owned by and under the care, custody, and control of that bank by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

5.     Defendants HUGH C. CLARK and INA M. WALKER fraudulently caused WSFS to fund a loan of approximately $357,500 to defendant INA WALKER for the purchase of a commercial property located at 22-24 East Mount Airy Avenue in Philadelphia.

6.     Defendants HUGH C. CLARK and INA M. WALKER knowingly and intentionally misrepresented material facts to WSFS, with the intent to deceive, by submitting the following items, among others, to WSFS:

(a)     two fake lease agreements which overstated the rental cash flow of the property and which contained the false or forged signatures of alleged lessees of the property intended for purchase by defendant WALKER;

(b)     misrepresentations about the rental status and income cash flow of a property owned by defendant WALKER and occupied by defendant CLARK;

(c)     a false tax return which misrepresented the true financial condition of the named buyer, defendant WALKER.

7.     Defendant INA M. WALKER failed to make the required loan repayments to WSFS and defaulted on the loan for an amount of approximately $339,000 due and outstanding.

All in violation of Title 18, United States Code, Sections 1344 and 2.

**A TRUE BILL:**

_____
**GRAND JURY FOREPERSON**

_____
**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**